No. 49,982

STATE OF KANSAS, *Appellant and Cross-Appellee,* v. ROSS O. DOYEN, *Appellee and Cross-Appellant.*

(580 P.2d 1351)

Opinion filed July 15, 1978.

*Philip A. Harley,* assistant attorney general, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the briefs for the appellant-cross-appellee.

*Robert D. Hecht,* of Scott, Quinlan and Hecht, of Topeka, argued the cause, and was on the brief for the appellee-cross-appellant.

The opinion of the court was delivered by

PRAGER, J.: This is an appeal by the state from the dismissal of a criminal complaint charging three counts of fraudulent campaign finance reporting in violation of K.S.A. 1977 Supp. 25-4129. The sole issue presented by the state on the appeal is whether the complaint, together with the supporting affidavit, was sufficient to allege a violation of the statute.

For purposes of this appeal we will assume the following facts to be true: In 1976 the defendant, Ross O. Doyen, became a candidate for reelection to the Kansas Senate from the twenty-third senatorial district. On June 19, 1976, Doyen appointed Lowell A. Abeldt as his treasurer. In an affidavit filed by Philip A. Harley, assistant attorney general, it is stated that Doyen person-

ally received contributions to his 1976 state senatorial campaign from nine political action committees during September and October, 1976, which he did not remit to his campaign treasurer within five days after receipt, in violation of K.S.A. 1977 Supp. 25-4106(*d*). The nine contributions, which were withheld for a period of thirty to sixty days, were from the following organizations in the amounts designated: Kansas Optometric Political Action Committee, $100; Lawyers Encouraging the Advancement of Good Government, $100; Kansas Auto and Truck Dealers Interested in Government, $100; Political Action Committee of Kansas Consulting Engineers, $50; Kansas Dental Political Action Committee, $75; Chiropractic Political Action Committee, $300; Kansas Credit Union Legislative Action Committee, $200; Kansas Association for Political Education and Action, $100; and Chiropractic Political Action Committee, $200. The state claims that, by intentionally withholding these contributions from his treasurer, defendant Doyen caused his treasurer to make false material statements in the campaign finance reports filed with the secretary of state on October 27, 1976, and December 3, 1976. Harley's affidavit further states that Doyen's campaign treasurer, Lowell A. Abeldt, fully and timely reported all contributions known to him at the time each report was filed and that the treasurer had no knowledge of the nine contributions until November 1976, when he promptly reported the same. All of the reports filed by the campaign treasurer with the secretary of state were filed and verified by Abeldt as treasurer as required by law.

Simply stated, the theory of the prosecution is this: Doyen intentionally withheld information as to certain campaign contributions from his innocent treasurer, thus causing the treasurer to file three false reports; it is a crime to make false reports under the Campaign Finance Act; therefore, Doyen is criminally liable for making false reports. Fraudulent campaign finance reporting is made a crime by K.S.A. 1977 Supp. 25-4129 which provides as follows:

"**Fraudulent campaign finance reporting; misdemeanor.** Fraudulent campaign finance reporting is intentionally making any false material statement in a report or statement made under this act.

"Fraudulent campaign finance reporting is a class A misdemeanor."

Following the filing of the complaint the defendant appeared in district court and moved for a dismissal of the complaint on

three grounds: (1) The service of summons was unlawful; (2) The attorney general had no authority to commence the prosecution; and (3) The complaint and the accompanying affidavit failed to allege an offense under 25-4129. The associate district judge dismissed the complaint on the grounds that the complaint and accompanying affidavit failed to state facts sufficient to allege an offense under the statute. As to the other grounds for dismissal, the trial judge ruled that the prosecution was properly commenced by the attorney general and that the service of summons upon the defendant was lawful. The state has appealed from the order dismissing the complaint. The defendant cross-appealed.

The sole issue raised on the appeal by the state is whether the complaint, in the three counts, is sufficient to allege a violation of 25-4129. It is the position of the state that the complaint properly alleged an offense against the defendant Doyen by accusing him of causing false campaign finance reports to be filed in violation of 25-4129, even though the actual filing was performed by his innocent agent. The state also maintains that the defendant is liable as an aider and abettor under K.S.A. 21-3205. The attorney general reasons that, although the campaign treasurer was innocent because he had no knowledge of the nine contributions, the defendant intentionally *caused* his treasurer to file a false report by withholding the contributions from the treasurer. Hence the state argues that the defendant is guilty of fraudulent campaign finance reporting.

In order to determine the issue raised on the appeal, we must carefully analyze those provisions of the Campaign Finance Act (K.S.A. 1977 Supp. 25-4101, *et seq.*) which are pertinent in this case. Under the act, certain procedures have been established which must be followed in the course of any political campaign. For purposes of clarity, we will discuss them step-by-step.

(1) Not later than ten days after becoming a candidate, every candidate must appoint either a campaign treasurer or a candidate committee (25-4103). The provisions pertaining to candidate committees are not involved in this case and will not be further mentioned. Not later than ten days after the appointment of his treasurer, the candidate must report the name and address of the treasurer to the secretary of state. The failure of the candidate to appoint a treasurer or to report his appointment to the secretary of state is specifically made a class A misdemeanor by K.S.A. 1977 Supp. 25-4133.

(2) A candidate may remove any treasurer that he has appointed, but, if he does so, he must appoint a successor and report the name and address of the successor within ten days of the occurrence of the vacancy to the secretary of state (25-4105). All contributions or expenditures must be made by or through the treasurer. If a candidate violates 25-4105 he may be convicted of a class A misdemeanor under the provisions of 25-4133.

(3) Section 25-4106(*a*) requires the *treasurer* to keep detailed accounts of all contributions and expenditures. 25-4106(*d*) provides that every person who receives a contribution for a candidate shall, on demand of the treasurer, or in any event within five days after receipt of such contribution, remit the same and render to the treasurer an account thereof, including the amount, the name, and address of the person, if known, making the contribution and the date received. It is important to note that a violation of 25-4106 is *not* declared to be a misdemeanor under the provisions of 25-4133 or in any other section of the Campaign Finance Act. The failure of a candidate, or any other person, to remit a contribution to the treasurer within five days after receipt is not made a criminal offense under the act.

(4) Section 25-4108 is a detailed, comprehensive statute which requires the campaign treasurer to file a series of five reports of contributions and expenditures in the office of the secretary of state. Each of the five reports covers a specific period of time, before and after the primary and general elections, and includes all contributions and expenditures during that period. If the treasurer files a report containing material errors or omissions, the Governmental Ethics Commission may require the treasurer to file an amended report. The intentional failure to file a campaign finance report by any person required to make the report is made a class A misdemeanor by section 25-4128. The intentional making of any false material statement in a report or statement constitutes fraudulent campaign reporting and is made a class A misdemeanor by section 25-4129. It is important to note here that, under 25-4108, it is the *treasurer* who is required to file the reports. There is nothing in that section which requires the *candidate* to file reports of contributions and expenditures.

(5) Section 25-4111 provides for the verification of reports. The *treasurer* is required to verify as correct any of the five

periodic reports required by 25-4108. The candidate is required to verify the reports required by 25-4103 pertaining to the appointment of his campaign treasurer. The intentional failure to verify reports as required by 25-4111 is specifically made a class A misdemeanor by section 25-4133.

The duty of enforcing the Campaign Finance Act is vested in the Governmental Ethics Commission (25-4119a). That commission is made a bipartisan commission consisting of eleven members, of whom five are appointed by the governor, two by the president of the senate, two by the speaker of the house of representatives, one by the minority leader of the house of representatives, and one by the minority leader of the senate. The commission is given the power to render, in writing, opinions interpreting the act (25-4120). The commission may receive complaints in writing from any individual, which may set forth alleged violations of the act (25-4121). The complaint may be investigated and, if the commission finds probable cause exists for believing the allegations of the complaint, the commission is required to fix a time and place for a hearing (25-4122). The act provides for a due process hearing, the issuance of subpoenas at the request of any party, and the production of pertinent books, papers, or documents (25-4124). Following the introduction of evidence the commission is required to make findings of fact. If it finds that the respondent has violated any provision of the act, the commission is required to submit a report to the attorney general and the district attorney of the appropriate county (25-4125). In addition, the commission is required to submit a report to the house of representatives or senate, if the respondent was elected to that body. In any case involving a judicial officer, the report is submitted to the supreme court (25-4127). The act suggests that a violation of its provisions by a candidate may be made the basis for impeachment or other disciplinary action such as censure, disqualification, or an ouster action brought by the attorney general (25-4127).

It must be emphasized that the Campaign Finance Act contemplates the enforcement of many of its various requirements by actions of a civil nature. It is important to note that the legislature has made certain violations of the act criminal offenses, while other violations of the act are not declared to be crimes. There are five sections of the Campaign Finance Act where criminal liabil-

ity is created for the violation of a particular duty: Failure to file a campaign finance report (25-4128); fraudulent campaign finance reporting (25-4129); charging an excessive amount for political advertising (25-4130); excessive campaign contributions (25-4131); and a miscellaneous section (25-4133), making it a class A misdemeanor to intentionally violate any of the provisions of 25-4103, 25-4104, 25-4105, 25-4107, 25-4111, 25-4113, 25-4126, and a certain confidentiality provision contained in 25-4122.

A candidate commits a misdemeanor if he fails to appoint or report the appointment of a treasurer as required by 25-4103, or if he fails to report the removal of a treasurer under 25-4105, or if he fails to verify any report required by 25-4103. Under the Campaign Finance Act it is not made a crime for a candidate to fail to file any of the reports required to be filed by the treasurer under 25-4108, nor is it made a crime for a candidate who receives a contribution to fail to remit the same and render to the treasurer an account thereof within five days after receipt as required by 25-4106($d$).

The controversy undoubtedly arose in this case because the Kansas Campaign Finance Act, as enacted in 1974 and amended in subsequent years, does not require a candidate either to file or verify the reports of contributions or expenditures made in the course of a political campaign. We note that under the Federal Election Campaign Act (2 U.S.C. § 434) both the campaign treasurer and each *candidate* for federal office are required to file reports of receipts and expenditures. If the candidate files a false report, he may be subjected to certain criminal penalties. (2 U.S.C. § 441j.)

In its report to the 1974 Kansas legislature, the interim legislative committee which studied the regulation of political campaign expenditures and contributions recommended a bill which required both the candidate and his treasurer to certify to the correctness of each report of contributions and expenditures required under the Campaign Finance Act. In the preparation of its report, the interim committee studied the campaign finance laws of certain other states and noted that major revisions had recently been enacted in the campaign finance laws of Florida, California, New Jersey, Oregon, and Texas. An examination of the campaign finance statutes in those five states reveals that all of them require either that the reports of contributions and expend-

itures be filed by the candidate or that the candidate verify such reports. (Florida [Fla. Stat. § 106.07]; California [Cal. Elec. Code § 11558 (West 1977)]; New Jersey [N.J. Stat. Ann. § 19.44A-16 Supp. 1973]; Oregon [Or. Rev. Stat. § 260.072]; Texas [Tex. Elec. Code Ann. Art. 14.08 (Vernon)].) It is clear that, under those state campaign finance laws, a candidate who files a report or who verifies his treasurer's report containing intentional omissions of certain contributions would be subject to criminal penalties. The 1974 Kansas legislature apparently decided not to include in the Kansas act the requirement that a candidate either file a report of contributions and expenditures or verify the accuracy of such a report filed by his treasurer.

With the above provisions of the Campaign Finance Act in mind, we now turn to a consideration of the issue before us. We are, at the outset, confronted with the interpretation of a statute which imposes criminal penalties. It is a fundamental rule that a criminal statute is to be strictly construed and is not to be extended by courts to embrace acts or conduct not clearly included within its prohibitions. (*State v. Finley,* 199 Kan. 615, 617, 433 P.2d 414 [1967]; *State v. Crosby,* 182 Kan. 677, 324 P.2d 197 [1958].) If the facts alleged in a complaint or information do not constitute an offense within the terms and meaning of the statute upon which it is based, the complaint or information is fatally defective. (*State v. Bishop,* 215 Kan. 481, 524 P.2d 712 [1974].)

K.S.A. 1977 Supp. 25-4108 makes it clear that it is the campaign treasurer who has the legal duty to file the periodic reports of contributions and expenditures during the course of the campaign. The candidate himself is not required to file such reports or to verify them as correct. The state urges, however, that although defendant Doyen himself did not file a report containing any false material statement, he caused his campaign treasurer to file a false report by withholding certain contributions from his treasurer. In the information the defendant is specifically charged with "causing" the false reports to be filed. It is important to note that the word "causing" is not included in the definition of the crime set forth in K.S.A. 1977 Supp. 25-4129. If the legislature had intended to make it a crime for the candidate to "cause" his treasurer to file a false report, it could easily have done so. There are many statutes contained in the Kansas Criminal Code where the legislature has provided that "causing" an act

to be committed by another constitutes a criminal offense. See, for examples, endangering a child, K.S.A. 21-3608; fraudulently obtaining execution of a document, K.S.A. 21-3706; giving a worthless check, K.S.A. 21-3707; making a false writing, K.S.A. 21-3711; littering, K.S.A. 21-3722; warehouse receipt fraud, K.S.A. 21-3736; and theft of telecommunication services, K.S.A. 21-3745. Thus the legislature has rather frequently included the "causing" of an act to fall within the statutory definition of a crime when it desired to do so. Should we interpret 25-4129 to include "causing" the making of a false material statement in the treasurer's report, such construction would extend the application of 25-4129 to embrace acts or conduct not clearly within the provisions of the statute. To do so would violate the rule of strict construction of criminal statutes.

In construing 25-4129, we must also consider the other sections contained in the Campaign Finance Act which have been discussed and analyzed. As noted above, the legislature did not make criminal the failure of a candidate, or any other person, to remit a contribution to the treasurer within five days after receipt. That fact, coupled with the further fact that the violations of certain other sections by a candidate are specifically made criminal, leads us to the conclusion that the failure of a candidate to remit a contribution to his treasurer cannot be made a criminal act indirectly by judicially including that omission within the definition of fraudulent campaign finance reporting.

We have found no Kansas cases exactly in point. From other jurisdictions, the case closest in point is *State v. Buchanan,* 189 So. 2d 270 (Fla. App. 1966). There the defendant, the elected sheriff of Dade county, was charged with numerous counts of knowingly making, by and through his campaign treasurer, a false report of political contributions. The Florida statute provided a penalty for knowingly making any false statement or report. The Florida statute placed the duty of making campaign reports on the campaign treasurer and only the campaign treasurer was required to certify the correctness of any such reports. The defendant was charged with knowingly making, by and through his campaign treasurer, a false report, said report being false in that it did not list a certain contribution to the campaign fund. The Florida court of appeals held that the information failed to charge a crime under the Florida statute since the acts

alleged did not clearly come within the terms of the statute and the court was required to strictly construe a penal statute.

The state maintains that defendant Doyen can properly be prosecuted as an aider and abettor under K.S.A. 21-3205(1) which provides as follows:

"21-3205. **Liability for crimes of another.** (1) A person is criminally responsible *for a crime committed by another* if he intentionally aids, abets, advises, hires, counsels or procures the other to commit a crime." (Emphasis supplied.)

That statute, in clear language, requires that in order for a person to be an aider or abettor, he must aid or abet *another person* in committing the crime. The generally accepted rule is that a person cannot aid and abet the commission of a crime unless another commits the offense. One cannot aid and abet himself in the commission of an offense. Stated in another way, one cannot be guilty of aiding and abetting unless another as principal committed a crime. (*Morgan v. United States,* 159 F.2d 85 [10th Cir. 1947]; *United States v. Zerbst,* 111 F. Supp. 807 [D.C. S.C. 1953]; and *Shuttlesworth v. Birmingham,* 373 U.S. 262, 10 L.Ed.2d 335, 83 S.Ct. 1130 [1963].) In the present case, the affidavit supporting the complaint alleges that defendant's campaign treasurer acted in good faith and fully and timely reported all contributions known to him at the time each report was filed. The rule which holds an aider and abettor liable is thus not applicable since, under the facts of this case, there is no other person who committed a crime as the principal who was aided and abetted by the defendant Doyen.

The state argues that the defendant is criminally responsible because he committed the crime through an innocent agent. It is true that, as a general rule, if a person causes a crime to be committed through the instrumentality of an innocent agent, he is the principal in the crime and punishable accordingly, although he was not present at the time and place of the offense. This general rule is applicable, however, only in factual situations where the defendant could be found guilty as a principal if he committed the act himself. See for example, *State v. Kliewer,* 210 Kan. 820, 504 P.2d 580 (1972); *State v. Darling,* 208 Kan. 469, 493 P.2d 216 (1972). In the present case the defendant is charged with the withholding of campaign contributions from his campaign treasurer thus causing his campaign treasurer to file a false report. It must be emphasized that the defendant Doyen did not and

could not himself make any false material statement in any of the periodic reports required to be filed and verified by the campaign treasurer under the provisions of K.S.A. 1977 Supp. 25-4108 and 25-4111. As far as *those* reports are concerned, the treasurer having the legal duty to file correct reports would be the principal in the commission of the crime of fraudulent campaign finance reporting. It should be noted that the candidate could be guilty as a principal if he intentionally made a false statement in *his* report of the appointment or removal of a treasurer under K.S.A. 1977 Supp. 25-4103 or 25-4105.

The cases relied upon by the state are not applicable to the facts of this case. In each case cited, the defendant was a person included within the class of persons contemplated by the statute. For example, in *United States v. Giles,* 300 U.S. 41, 81 L.Ed. 493, 57 S.Ct. 340 (1937), the federal statute (12 U.S.C. § 592) made it a crime for any officer, director, agent, or employee of any federal reserve bank to make any false entry in any book, report, or statement of such bank with intent to injure or defraud the bank. The defendant in that case, a bank teller, withheld selected deposit slips for three or four days before permitting them to reach the bookkeeping department, thus causing the ledger to show false balances. The United States Supreme Court held that, since the false entries were the intended and necessary result of defendant's deliberate action in withholding the deposit tickets, he, in effect, "made them," and defendant could be held criminally liable for making false entries under the statute. In *Giles* the defendant, as a teller of the bank, was clearly within the class of persons contemplated by the statute. Since the defendant in the course of his duties had control over the making of entries on the ledger, he could be held liable under the federal statute. *Giles* is distinguishable from the present case in that here only the campaign treasurer is required to file and verify the periodic reports required under section 25-4108.

From what we have said above, it follows that the district court was correct in sustaining the defendant's motion to dismiss the complaint. The creation of a crime by legislative enactment is within the power of the legislature. It is not within the power of this court. The existence of the crime, which the state urges in this case, does not clearly appear by the statute and it may not be added by judicial interpretation. The legislature has made certain

violations of the Campaign Finance Act criminal offenses, while other violations of the act are not declared to be crimes. It is up to the legislature to expand the scope of criminal liability for other violations of the act if it chooses to do so. In view of our disposition of the issue raised on the appeal, we do not deem it necessary to consider the points raised on the cross-appeal.

Judgment affirmed.